UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DEAVEN TUCKER

v.                                                                                           NO. 07-406ML

A.T. WALL, II, et. al.

## REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Plaintiff Deaven Tucker, an inmate at the Adult Correctional Institutions in Cranston, Rhode Island, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging a violation of his Constitutional Rights ("Complaint") (Docket # 1). Currently before the Court is the motion of three of the named defendants, Steven Cabral, Linda Rose, and Robert Catlow, for summary judgment on plaintiff's claims that they violated his First Amendment rights by monitoring and tampering with his mail (Docket # 23). Plaintiff objected to defendants' motion ("Plaintiff's Objection") (Docket # 28). This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. As set forth below, I recommend that defendants' motion be granted.

## UNDISPUTED FACTS

Unless otherwise noted, the following are the relevant undisputed facts garnered from the parties' submissions in this matter:

Deaven Tucker is a prisoner in the custody of the Rhode Island Department of Corrections ("RIDOC"), in Cranston, Rhode Island. At all pertinent times, Defendants Linda Rose and Steven Cabral served as investigators for the Special Investigations Unit ("SIU") at RIDOC, whose duties were to conduct investigations regarding possible wrongdoing and criminal activity committed by inmates. Defendants' Statement of Undisputed Facts ("DSUF"), ¶ 1-2. Defendant Robert Catlow served as Chief of the SIU Unit at RIDOC, and was responsible for overseeing all ongoing investigations conducted by subordinate investigators under his supervision. *Id.*, at ¶ 3-4.

The SIU had gathered information prior to April of 2005 that plaintiff, while an inmate, had been involved in narcotics trafficking. *Id.*, ¶ 8. As a result, on April 1, 2005, Cabral issued, and Catlow approved, a memo to the prison mail room initiating monitoring of plaintiff's incoming and outgoing mail. *Id.*, at ¶ 7 & p. 4. Plaintiff, however, claims that defendants began

1

Case 1:07-cv-00406-ML-DLM Document 53 Filed 12/31/09 Page 2 of 4 PageID #: 268


monitoring his mail a month prior to Catlow's official authorization, at the start of the investigation into his alleged drug trafficking on March 1, 2005. Plaintiff's Objection, at p. 2. Both parties concede that the monitoring of plaintiff's incoming and outgoing mail ended in June of 2005. DSUF, at ¶ 6; Complaint, at ¶ 7.

Additionally, on May 18, 2005, plaintiff sent a handwritten complaint to defendant Catlow claiming that one day Rose and/or Cabral, with the intention of alienating plaintiff's family and friends, had switched the envelopes of four of plaintiff's outgoing personal letters so the letters were sent to the wrong parties. DSUF, at p. 6; Complaint, at ¶ 7. In response to plaintiff's complaint, Catlow advised plaintiff to encourage any affected party to contact him so that he could properly address and rectify the situation. DSUF, at p. 5.

## DISUSSION

### I. Summary Judgment Standard

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

When requesting summary judgment, the moving party bears the initial burden of showing "an absence of evidence to support a nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). The nonmovant must then document some factual disagreement sufficient to deflect brevis disposition. On issues where the nonmovant bears the ultimate burden of proof, he must present definite competent evidence to rebut the motion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986). In evaluating motions for summary judgment, however, the court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir. 2004) (internal citation omitted).

### II. Mail Monitoring and Switching

"It is well established that inspection of an inmate's mail may implicate First Amendment rights." *Felton v. Lincoln*, 429 F.Supp.2d 226, 242-43 (D.Mass. 2006)(citing *Stow v. Grimaldi*, 993 F.2d 1002, 1003-04 (1st Cir. 1993)). However, prison officials may impose a restriction on incoming mail if the restriction is reasonably related to a legitimate penological interest,

2

*Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874 (1989), and on outgoing mail if the restriction is in furtherance of a substantial governmental interest unrelated to the suppression of expression and no greater than necessary to achieve such goal, *Procunier v. Martinez*, 416 U.S. 396, 413, 109 S.Ct. 1874 (1974). The Supreme Court has recognized "security, order, and the rehabilitation of inmates" as substantial governmental interests. *Id.* at 396; *see also Stow*, 993 F.2d at 1004; *see also Dupont v. Dubois*, 99 F.3d 1128, at *3 (1st Cir. 1996)(no constitutional violation when mail privileges withheld from prisoner in segregation for short periods of time).

Here, plaintiff has alleged that his First Amendment rights were violated by Rose and Cabral (i) monitoring plaintiff's mail from March 2005 through June 2005 and (ii) intentionally switching the recipients of four of plaintiff's outgoing personal letters. Additionally, although not clear, plaintiff seems to allege that defendant Catlow, as supervisor, violated plaintiff's rights by allowing both the mail monitoring and the mail switching.

In response to the mail monitoring claim, defendants present Catlow's affidavit stating that plaintiff's mail was monitored from April 1, 2005 until June of 2005 to prevent plaintiff's involvement in narcotics trafficking while in prison. Motion to Dismiss, Exhibit 1, at ¶ 5. Preventing narcotics trafficking furthers a legitimate governmental interest in the safety and security of prisoners and staff within RIDOC. *See Procunier*, 416 U.S. at 413; *Bailey v. Beard*, No. 3:CV-06-1707, 2008 WL 4425588 (Sept. 29, 2008)(mail monitoring justified by concern that prisoner planned introduction of drugs into prison). As plaintiff has presented no evidence to the contrary or suggestion that the monitoring was not narrowly drawn, defendants have shown they are entitled to judgment as a matter of law regarding mail monitoring from April to June 2005.

Further, defendants are also entitled to summary judgment regarding plaintiff's claims that the monitoring of his mail by defendants Rose and Cabral in March 2005, a month before official authorization from Catlow, violated his rights. First, plaintiff provides no evidence to support his contention that defendants were monitoring his mail in March 2005, and plaintiff's conclusory allegations are insufficient to establish the existence of the underlying facts, much less a constitutional claim. *See Galloza*, 389 F.3d at 28. Additionally, plaintiff concedes that any such monitoring in March was in connection with an investigation into his alleged narcotics trafficking, and thus such monitoring would also have been to further a legitimate governmental interest. *See Procunier*, 416 U.S. at 413.

Plaintiff also contends that one day Rose and/or Cabral switched the envelopes of four of his outgoing letters to family and friends, thus causing plaintiff's personal mail to be sent to

3

unintended recipients. However, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *See Davis v. Goord*, 320 F.3d 346, 351 (2$^d$ Cir. 2003)(citations omitted). Further, plaintiff concedes that Catlow promptly responded to plaintiff's complaint regarding the same. *C.f. Bartolomeo v. Liburdi*, No. 97-624, 1999 WL 143097, at * D.R.I., February 04, 1999)("Where mail delays are no more than infrequent episodes, and prompt attention is paid to complaints of missing or late mail, there is not a constitutional violation"). Here, plaintiff's allegations of mail switching fail to rise to the level of a constitutional claim. Thus, defendants are entitled to summary judgment regarding plaintiff's mail switching claim.

Finally, Catlow is entitled to summary judgment with respect to plaintiff's claims that he violated plaintiff's rights as a supervisor of Cabral and Rose because claims brought pursuant to Section 1983 may not be based upon a respondeat superior theory. *See Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994).

## CONCLUSION

For the reasons set forth above, I recommend that the defendants' motion for summary judgment be GRANTED on plaintiff's First Amendment claims against Rose, Cabral and Catlow regarding mail monitoring and switching discussed above. Furthermore, as the Complaint states no other claims against Rose and Catlow, I further that Rose and Catlow be DISMISSED as defendants in this action.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed. R. Civ. P. 72(b). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

_____
Jacob Hagopian
Senior United States Magistrate Judge
December 31, 2009