## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

**DEAVEN TUCKER**

**v.**                                                               **NO. 07-406ML**

**A.T. WALL, II, et. al.**

### REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

On November 1, 2007, Deaven Tucker ("Plaintiff"), *pro se*, filed a complaint (the "Complaint") with the Court pursuant to 42 U.S.C. § 1983 ("§ 1983") (Docket #1). Plaintiff, who is confined at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, named as defendants eighteen current or former ACI employees. Presently before the Court is the Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by the eleven defendants that have been served (Wall, Gadsen, Weeden, Vitale, Catlow, Rose, Cabral, Begones, Forgue, Melino and Lepizzera)[1] (Docket #22). This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. Plaintiff has not objected to defendants' motions, thus a basis exists for granting defendants' motions. However, given the reasons stated below, I recommend that the defendants' motion to dismiss for failure to state a claim be granted in part and denied in part.

### BACKGROUND

The following are the relevant factual allegations from the Complaint, which, pursuant to *Ashcroft v. Iqbal,* -- U.S. --, 129 S.Ct. 1937, 1949-50 (2009)(are taken as true for the purposes of the instant motion to dismiss:

On March 1, 2005, Plaintiff was moved from the Medium I Facility to segregation without a notice of transfer during a pending narcotics investigation. Plaintiff was booked for drug trafficking on March 31, 2005 and transferred to the hospital ward without notice of transfer. Plaintiff was chained to a bed from March 31 until April 6, 2005, when defendants Forgue and Cabral forced him to defecate into a plastic bag to test his feces for narcotics. Later that day, while escorting Plaintiff to an interrogation, Cabral "smacked" Plaintiff in the face, cutting his lip. During the interrogation with defendant Mokler, Plaintiff was denied his attorney

---

[1] I have issued a separate Report and Recommendation simultaneous herewith recommending the dismissal of the claims against the seven defendants who, having not been served, are not parties to this Motion to Dismiss.

and berated by defendants Mokler, Forgue, and Cabral for refusing to cooperate with the investigation. Plaintiff was then booked by the investigators for making threats he did not make.

On April 8, 2005, Plaintiff was booked for a dirty urine sample that was "falsified" by Cabral and Forgue. On the same day, Cabral and Forgue moved Plaintiff from the intake hospital to intake segregation. They issued a memo that effectively denied Plaintiff recreation, showers, mail, and the ability to speak with his counselor, defendant Morettii, and his attorney for either ten or fourteen days.[2] They posted the memo in the segregation control center informing defendants Lombardi and Lepizzera of the denial of privileges. On April 17, 2005, Plaintiff was moved from the intake center to High Security without notice of transfer.

Defendants Rose and Cabral, with the approval of Catlow, monitored Plaintiff's outgoing mail from March 1, 2005 until June 2005 in connection with the investigation of his involvement in narcotics trafficking. On June 3, 2005, Rose and/or Cabral switched the envelopes of four of Plaintiff's outgoing personal letters. Also at some point, Cabral booked Plaintiff for making threats in an outgoing letter which Plaintiff never made.

Plaintiff was released from the ACI in June 2006, but returned in December 2006. Upon his return, his outgoing mail was monitored immediately. On January 3, 2007, Plaintiff was moved from the Intake Service Center to High Security without notice of transfer or classification. Then, on January 4, 2007, Plaintiff was moved to High Security segregation where he was placed in a windowless cell and denied recreation and his property until January 17, 2007. On January 17, 2007, Plaintiff was reclassified as B-Status and moved from segregation to B-Status in High Security on January 19, 2007.

At some point, a classification board decided, without Plaintiff present, that Plaintiff was to be classified as Maximum Security; however, he remained in High Security. On March 16, 2007, Plaintiff was brought to a classification board where defendant Amaral denied Plaintiff's request to be placed at Maximum Security, instead reclassifying him to High Security B-Status.

On March 17, 2007, Plaintiff sent a request to defendant Amaral asking to marry his fiancé. His request was approved for April 17, 2007, and later pushed back to May 8, 2007; however, as of the filing of the Complaint, the marriage ceremony had still not occurred.

On May 3, 2007, Plaintiff was moved from High Security B-Status to Maximum Security segregation without notice of transfer, and was denied visits from his family, store orders, his

---

[2] The Complaint states that the deprivations lasted fourteen days, but also states that he was transferred out of intake segregation on April 17, 2007, after only ten days.

property, incoming and outgoing mail, and phone calls to his family and attorney until June 1, 2007. On May 30, 2007, Plaintiff was indicted on new charges. Plaintiff's sentence ended on June 4, 2007, but rather than being moved to intake as a detainee awaiting trial, he remained in Maximum Security segregation. On June 15, 2007, defendant Weeden informed Plaintiff that he was on the new status of administrative confinement awaiting trial that had been created in anticipation of his indictment. Plaintiff alleges he did not fit the criteria for such administrative confinement. As a result of his status, for an unspecified amount of time, Plaintiff was denied recreation, allowed one ten minute phone call a week, and only allowed to see the law librarian once a week.

Plaintiff filed grievances on July 7 and August 3, 2007, as well as a § 1983 complaint on July 24, 2007, but was informed that the grievances were lost and the complaint was "opened, read and trashed." He refiled the grievances on August 5, 2007 and filed the instant § 1983 complaint on November 1, 2007. Plaintiff was also informed that a copy of his son's birth certificate was lost in the mail.

Finally, on July 26, 2007, defendants Alves, Melino, and Ashton and two other guards entered Plaintiff's cell for a routine search and berated him for filing the grievances and § 1983 complaint. Thereafter, while Alves and another guard turned their backs, Melino pulled a paint-can handle from his waistband and informed defendant Alves that the metal had been in Plaintiff's cell vent. Plaintiff was booked and placed in segregation for possession of a weapon.

Plaintiff filed the instant action on November 1, 2007 naming 18 defendants. He alleges violations of his rights (1) under the Fourteenth Amendment regarding the transfers and false bookings; (2) under the Eighth Amendment regarding the conditions of his confinement and excessive force; (3) under the First and Fourteenth Amendments regarding access to courts, mail, and retaliation for legal filings; (4) under the Fourteenth Amendment regarding conditions of his confinement as a pretrial detainee; and (5) under the Fourteenth Amendment regarding his right to marry. Eleven of the nineteen defendants filed the instant motion urging that the Complaint fails to state claims against them on which relief may be granted and should be dismissed.

3

## DISCUSSION

### I.     Rule 12(b)(6) Standard

In order to survive a motion to dismiss for failure to state a claim on which relief may be granted pursuant to Federal Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). The Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff, *see Gargano v. Liberty Int'l Underwriters,* 572 F.3d 45, 48 (1st Cir. 2009), and review pleadings of a *pro se* plaintiff liberally, *see Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285 (1976). However, the Court need not credit bald assertions or unverifiable conclusions. *See Iqbal,* 129 S.Ct. at 1949.

### II.    42 U.S.C. § 1983

Plaintiff has brought suit pursuant to § 1983, which creates a cause of action for persons who are denied a federally protected right. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689 (1979). In order to state a § 1983 claim, the conduct about which a plaintiff complains must (1) have been committed by a person acting under color of state law and (2) have deprived the plaintiff of a constitutional or a federal statutory right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920 (1980).

### III.   Fourteenth Amendment: Transfers and False Bookings

#### A.     Transfers and Reclassifications

Plaintiff alleges that he was transferred, reclassified or placed in segregation on numerous occasions without notice of transfer or classification board hearings, as allegedly required by ACI policy, in violation of his procedural due process rights under the Fourteenth Amendment. In order to state a procedural due process claim, a plaintiff must demonstrate a violation of a life, liberty or property interest. *See Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). However, neither the constitution nor Rhode Island state law creates a liberty interest in an inmate classification procedure. *See Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532 (1976); *Bishop v. State,* 667 A.2d 275, 277 (R.I. 1995). Further, Plaintiff does not provide allegations demonstrating that the transfers or classifications imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)(holding that a state created liberty interest protected by the Due Process Clause generally involves a restraint that "imposes atypical and

4

significant hardship on the inmate in relation to the ordinary incidents of prison life" and punitive segregation for a term of 30 days did not impose such hardship); *Lynch v. Pelissey*, No. 06-409T, 2008 WL 782832, at *3 (D.R.I. Mar. 20, 2008)(plaintiff had no liberty interest in not being assigned to ACI High Security Center because such assignment was not "an 'atypical and significant hardship' in relation to the ordinary instances of prison life"); *Williams v. Wall*, No. 06-12S, 2006 WL 2854296, at *3 (D.R.I. Oct. 04, 2006)(21 days of segregation and loss of good time at ACI fails to implicate liberty interest).

Additionally, even if the transfers or classifications violated ACI policy, as Plaintiff alleges, a violation of internal ACI policy does not create a constitutional violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)("Our case law is clear, however, that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met").

Accordingly, Plaintiff's claim regarding transfers and classification at the ACI should be dismissed for failure to state a claim on which relief may be granted. I so recommend.

### B.    False Bookings

Plaintiff also claims that investigators Cabral, Forgue, and Mokler falsified bookings against him for threats and dirty urine on April 6 and 8, 2005, respectively, and that Cabral fabricated a booking against him for making threats in an outgoing letter on an unidentified date in 2005. Plaintiff does not state the consequences of the bookings, although he alleges he was placed in intake segregation on April 8, 2005 for ten or fourteen days.

Plaintiff's allegations fail to state viable due process claims. As stated above, the due process procedural protections apply only if a life, liberty or property interest is abrogated. *See Wilkinson*, 545 U.S. at 221. However, a prisoner does not have a free-standing liberty interest in not having a false disciplinary charge leveled against him. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2[d] Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273 (1988); *Williams v. Foote*, No. 08-2838, 2009 WL 1520029, at *7 (C.D.Cal. May 28, 2009).

Furthermore, to the extent Plaintiff intends to state that he has a liberty interest in avoiding the consequences of the allegedly fabricated bookings, as he did not allege any consequences, such claims fail. *See c.f. Surprenant v. Rivas*, 424 F.3d 5, 14 (1st Cir. 2005) (prison guard liable where fabricated charge led directly to pretrial detainee's immediate placement in segregation without intervening hearing). Additionally, even if it were assumed

that Plaintiff was subjected to the ten or fourteen day segregation as a direct result of the bookings, as such temporary confinement in segregation does not involve an "atypical, significant deprivation," it did not implicate a constitutional liberty interest. *See Sandin*, 515 U.S. at 487; *see also Williams*, 2006 WL 2854296, at \*3.

Accordingly, I find that Plaintiff fails to state a claim on which relief may be granted against Cabral, Forgue, and Mokler for violating his due process rights by fabricating bookings and recommend that these claims against these defendants be dismissed.

## IV.   Eighth Amendment:  Conditions of Confinement and Excessive Force

### A.      Conditions of Confinement.

The Eighth Amendment requires prison officials to provide humane conditions of confinement by "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994) (citation omitted). However, "the Constitution does not mandate comfortable prisons"; to the extent that certain conditions are only "restrictive" or "harsh," they are merely "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347-49, 101 S.Ct. 2392 (1981). To allege an Eighth Amendment claim, a plaintiff must plead facts which establish both an objective component, that he suffered "extreme deprivations" beyond the bounds of human decency, and a subjective component, that the defendant acted with "deliberate indifference" to the conditions. *See Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992).

Here, Plaintiff asserts that defendants Cabral and Forgue violated his Eighth Amendment rights by forcing him to defecate into a plastic bag so his feces could be tested for narcotics and by denying him recreation, showers, and access to a counselor for a period of ten or fourteen days in April 2005.  Plaintiff also seems to suggest that defendants Lepizzera and Lombardi were involved in denying him privileges while he was in segregation in April 2005.  Plaintiff's claims of temporary restrictions however do not assert the kind of "extreme deprivation" that would rise to the level of a constitutional violation. *See Figueroa v. Dinitto*, 52 Fed.Appx. 522, 523 (1st Cir. 2002); *Hightower v. Vose*, 95 F.3d 1146, at \*2 (1st Cir. 1996)(denial of shower for prisoner for eight days is a de minimis imposition that did not implicate constitutional concerns); *Knight v. Armontrout*, 878 F.2d 1093, 1095-96 (8th Cir. 1989)(thirteen days without recreation does not rise to Eighth Amendment violation).  Accordingly, Plaintiff fails to state Eighth Amendment claims regarding his conditions of confinement against defendants Cabral, Forgue, Lepizzera or

Lombardi.  I therefore recommend that the Motion to Dismiss filed by Cabral, Forgue, and Lepizzera regarding this claim be granted and such claims against them be dismissed.

Plaintiff also asserts that he was subjected to conditions of confinement including (1) being placed in a windowless cell and denied recreation and his property for 14 days in January 2007; and (2) being denied visits from his family as well as access to store orders, his property, incoming and outgoing mail, and phone calls to his family or attorney from May 30, 2007 until June 1, 2007; however, as Plaintiff does not name a party responsible for the conditions, such claims fail.  Accordingly, Plaintiff's Eighth Amendment claims regarding his conditions of confinement should be dismissed, I so recommend.

**B.    Excessive Force**

Plaintiff also claims that he was (1) chained to a bed for seven days; and (2) "smacked" by defendant Cabral resulting in a cut on his lip.  In an excessive force claim, the proper inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). However, the Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"  *Hudson*, 503 U.S. at 10 (quoting *Whitley*, 475 U.S. at 327).  Thus, "[n]ot every push or shove ... violates a prisoner's constitutional rights." *Id.* at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2$^d$ Cir. 1973)).

First, being chained to a bed for seven days could constitute the use of excessive force if done maliciously and sadistically to cause harm rather than in a good faith effort to maintain order.  *See Whitley*, 475 U.S. at 320-21; *Ferola v. Moran*, 622 F.Supp. 814, 820 (D.R.I. 1985)("[W]hile there is no *per se* constitutional prohibition on the use of restraints such as shackles, chains, handcuffs and the like, courts must review with great care the circumstances surrounding their use in a particular instance to determine whether the strictures of the Eighth Amendment have been satisfied").  However, Plaintiff fails to name a defendant responsible for the restraint.  Accordingly, I recommend Plaintiff's claim be dismissed.

Second, Plaintiff's allegation that defendant Cabral smacked him and cut his lip describes a *de minimis* use of force that cannot be considered "repugnant to the conscience of mankind." *See Hudson*, 503 U.S. at 10; *see also Calabira v. Dubois*, 23 F.3d 394, at *2 (1st Cir. 1994)("[A] single blow caused by a thrown object and resulting only in a bloody lip- was clearly *de minimis* for Eighth Amendment purposes"); *Sheffey v. Greer*, 391 F.Supp. 1044, 1046 (D.C. Ill. 1975)

("A single punch in the face by a prison guard does not constitute cruel and unusual punishment"). Accordingly, Plaintiff's Eighth Amendment claim for excessive force against Cabral should be dismissed. I so recommend.

## V.   First and Fourteenth Amendments: Access to Courts, Mail Tampering, and Retaliation

### A.   Access to Courts

In *Bounds v. Smith* the Court held that prisoners have a constitutional right of access to the court. 430 U.S. 817, 821, 97 S.Ct. 1491 (1977). However, to recover under this theory, a plaintiff must demonstrate that he or she suffered an actual injury, such as the frustration of a nonfrivolous legal claim, as a result of the interference with his or her access to the court. *See Lewis v. Casey*, 518 U.S. 343, 351-52, 116 S.Ct. 2174 (1996).

Here, Plaintiff claims that (1) he was denied certain means of accessing the courts when he was placed in segregation in April 2005 and May 2007, including access to mail and his attorney; (2) prison officials lost two of his grievances and a civil rights complaint in the mail, requiring him to resend the same; and (3) he was only able to see the law librarian once a week while on administrative confinement. However, Plaintiff does not assert that he suffered any injury to a nonfrivolous lawsuit as a result of the conditions about which he complains. Thus, Plaintiff's claims fail to rise to the level of a constitutional violation. *See Lewis*, 518 U.S. at 351-52; *see also Davis v. Goord*, 320 F.3d 346, 351 (2[d] Cir. 2003).

### B.   Mail Tampering

Plaintiff also asserts the following violated his First Amendment rights: (1) the loss of outgoing legal mail (grievances and a civil complaint) and incoming personal mail (a birth certificate); (2) the denial of mail while in segregation; and (3) the monitoring of his mail from March 2005 until June 2005 and from December 13, 2006 through at least November 1, 2007.

Here, with respect to the loss of his mail, Plaintiff does not suggest that the loss was part of a practice or policy of purposeful withholding or destruction of his mail. "While the loss or interruption of the [P]laintiff's mail may be frustrating, it fails to rise to level of a Constitutional violation." *Bartolomeo v. Liburdi*, No. 97-624, 1999 WL 143097, at *3 (D.R.I., Feb. 04, 1999); *see also Davis*, 320 F.3d at 351 ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"). Further, to the extent Plaintiff contends a denial of a property right from the loss of his mail, he fails to state a claim because post-deprivation remedies are available to him. *See Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194 (1984).

Additionally, with respect to Plaintiff's claims regarding denial of access to mail while in segregation, the First Circuit has recognized that a prison may restrict a prisoner's access to incoming and outgoing mail for short periods of time while he is in segregation. *Dupont v. Dubois*, 99 F.3d 1128, at *3 (1st Cir. 1996)(no constitutional violation when mail privileges withheld from prisoner in segregation for periods of four to eleven days)(citing *Little v. Norris*, 787 F.2d 1241, 1243-44 (8th Cir. 1986)(30-day withholding of mail from prisoner in segregation did not amount to a constitutional violation)).

Finally, with respect to the mail monitoring, prison officials may impose restrictions on incoming mail if the restriction is reasonably related to a legitimate penological interest, *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874 (1989), and on outgoing mail if the restriction is in furtherance of a substantial governmental interest unrelated to the suppression of expression and no greater than necessary to achieve such goal, *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800 (1974). Here, in response to a Motion for Summary Judgment setting out defendants' justification for monitoring Plaintiff's mail in 2005, I recently recommended the dismissal of the 2005 mail monitoring claims against defendants Rose, Cabral, and Catlow. Additionally, with respect to the alleged mail monitoring beginning in December 2006, Plaintiff fails to name a defendant responsible for such monitoring.

Accordingly, Plaintiff's claims regarding the violation of his First Amendment rights with respect to his mail fail to state claims on which relief may be granted. Therefore, I recommend such claims be dismissed.

### C.  Retaliation

Plaintiff claims that, on July 26, 2007, defendants Melino, Alves, and Ashton and two other officers entered his cell to conduct a routine cell search and berated Plaintiff for filing a grievance on July 7, 2007 and a § 1983 complaint on July 24, 2007. Plaintiff asserts that defendant Melino planted a paint-can handle in his cell while the other officers turned their backs, and as a result Plaintiff was booked for possession of a weapon and placed in segregation.

A claim asserting retaliatory conduct in response to exercising a constitutional right consists of three elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) the plaintiff suffered an adverse action that would deter a person of ordinary firmness from the exercise of the right at stake, and (3) there was a causal connection between the constitutionally protected conduct and the adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979); *Price v. Wall*, 464 F.Supp.2d 90,

96 (D.R.I. 2006). With respect to the third element, a plaintiff must demonstrate that his or her constitutionally protected conduct was a motivating factor for the adverse action and that the retaliatory act would not have occurred "but for" the protected conduct. *McDonald,* 610 F.2d at 18. A chronology of events may be adequate to support an inference of retaliation. *See Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir. 1980); *McDonald*, 610 F.2d at 18.

Analyzing Plaintiff's claims here, the first hurdle requiring constitutionally protected conduct is satisfied by plaintiff's claims that he was retaliated against for filing grievances and a civil rights complaint. *See United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353 (1967); *Hightower*, 95 F.3d 1146, at *1. Second, in the prison context, transfers to segregation can be considered "adverse" to an inmate for purposes of retaliation claims. *See Thaddeus-X*, 175 F.3d at 396; *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)(plaintiff's allegation that false misbehavior report against him resulting in his transfer to keeplock housing for three weeks stated adverse action for retaliation claim). Third, the alleged chronology here of a weapon being planted in Plaintiff's cell a few weeks after he filed a grievance and two days after his § 1983 complaint was "opened, read and trashed" supports an inference of retaliation. In addition, Plaintiff's allegations that defendants Melino, Alves, and Ashton berated him for the legal filings immediately prior to the weapon being planted further supports the causal connection.

Accordingly, for purposes of a motion to dismiss, Plaintiff has pleaded sufficient facts to state a claim against Melino, Alves, and Ashton for retaliating against him for engaging in constitutionally protected activity. Therefore, the motion to dismiss filed by Melino regarding this claim should be denied. I so recommend.

## VI.   Fourteenth Amendment: Pretrial Detention Conditions

A pretrial detainee's rights regarding his conditions of confinement are protected by the Fourteenth, rather than the Eighth, Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). While the government may detain a person accused of a crime prior to trial in order to ensure his presence at trial and impose "restrictions and conditions ... that effectuate his detention and that maintain security and order in the detention facility," "a state government may not *punish* a pretrial detainee without contravening the Fourteenth Amendment's Due Process Clause." *O'Connor v. Huard*, 117 F.3d 12, 16 (1st Cir. 1997)(citing *Bell*, 411 U.S. at 537 & 535)(emphasis added). To determine if confinement conditions contravene a pretrial detainee's due process rights, a "court must decide whether the disability is imposed for the purpose of

punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 411 U.S. at 538; *see also Surprenant*, 424 F.3d at 13.

Here, Plaintiff claims that after his sentence expired on June 4, 2007, he was kept at the ACI as a pretrial detainee on a new charge; however, rather than being transferred to intake, he was kept in Maximum Security segregation on a new status called administrative confinement awaiting trial. He remained in Maximum Security segregation without a re-evaluation from May 3, 2007 until at least November 1, 2007, the date he filed the Complaint. Even though he was a pretrial detainee, he was given only one ten minute phone call a week, denied outside recreation, and had limited access to legal resources. Further, Plaintiff contends that the ACI officials created the administrative confinement awaiting trial status in anticipation of Plaintiff's May 30, 2007 conviction, but had no reason to place him on such status.

Taking as true the allegations in the Complaint regarding the (1) length of time Plaintiff was in Maximum Security segregation on administrative confinement, (2) lack of a hearing prior to Plaintiff's placement there, (3) deprivations Plaintiff experienced, and (4) absence of a legitimate governmental purpose for imposing any penalties on Plaintiff, the Complaint alleges sufficient facts to suggest that Plaintiff's placement on administrative confinement in Maximum Security segregation was intended to punish Plaintiff rather than as an incident to a legitimate governmental purpose. *See, e.g., Bell*, 441 U.S. at 358; *Boulanger v. U.S. Bureau of Prisons, Director*, No. 06-308, 2009 WL 1146430, at *10 (D.N.H. Apr. 24, 2009)("Plaintiff's placement in segregation for 379 days, without any hearing, under the conditions claimed by Plaintiff, appears excessive in relation to the alternative purpose of preventing his escape").

Additionally, the Complaint states that defendant Gadsen is responsible for Plaintiff's classification and where he is housed at the ACI. Accordingly, plaintiff's Fourteenth Amendment claim regarding the conditions of his pretrial detention will be construed as against Gadsen at this stage of the proceedings. I therefore recommend that defendant Gadsen's motion to dismiss such claims against him be denied.

## VII.   Fourteenth Amendment Substantive Due Process:  Right to Marry

Plaintiff claims that although defendant Amaral initially approved Plaintiff's March 2007 request to marry his fiancé, as of filing the Complaint, the marriage ceremony had not occurred. Prisoners have a constitutional interest under the Fourteenth Amendment substantive due process clause in the fundamental right to marry; however, "the right to marry ... is subject to substantial restrictions as a result of incarceration." *See Turner v. Safley,* 482 U.S. 78, 95, 107 S.Ct. 2254

11

(1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* 482 U.S. at 89. While a complete ban on the decision to marry may not be reasonably related to any valid penological interest, prison officials may regulate the time and circumstances under which the marriage ceremony itself takes place. *Id.* 482 U.S. at 99.

Here, although Plaintiff claims he has not yet been married, he does not assert a specific administrative policy preventing him from getting married. In fact, defendant Amaral approved Plaintiff's request to be married, but, due to security reclassifications, Plaintiff's marriage ceremony has been postponed. Because prison officials have a valid interest in regulating the time and circumstances of a marriage ceremony, Plaintiff's claim regarding his right to marry should be dismissed. I so recommend.

**VIII.   Failure to Make Allegations of Wrongdoing**

Plaintiff names supervisors Wall, Weeden, Cutworth, and Vitale as well as officer Begones and counselor Moretti as defendants, but fails to make any factual allegations of wrongdoing against such individuals. Rule 8 of the Federal Rules of Civil Procedure requires pleadings to contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a); *see also Educadores Puertorriqueños En Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004)("[I]n a civil rights action ... the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why...").

Further, to the extent Plaintiff seeks to implicate the supervisors for their roles in the wrongdoing of their subordinates, such attempt fails. Only direct, rather than vicarious, liability is available in a § 1983 action, and the Complaint does not include any allegations regarding these supervisors' direct involvement in any alleged wrongdoing. *See Sanchez v. Pereira-Castillo*, --- F.3d ---, 2009 WL 4936397, at *13 (1st Cir. Dec. 23, 2009).

Accordingly, the Motion to Dismiss by Wall, Weeden, Vitale, and Begones should be granted and these individuals should be dismissed as defendants in this action. I so recommend.

## CONCLUSION

### I.    Claims to be Dismissed

In summary, as set forth above, I recommend the following:

(1)    the Motion to Dismiss be GRANTED with respect to the following claims:

    (i)    Fourteenth Amendment claims regarding transfers and false bookings;

    (ii)   Eighth Amendment claims regarding conditions of confinement and excessive force;

    (iii)  First and Fourteenth Amendment claims regarding access to courts, loss of mail, denial of mail access, and mail monitoring beginning December 2006; and

    (iv)   Fourteenth Amendment claims regarding Plaintiff's right to marry; and

(2)    the Motion to Dismiss be DENIED with respect to the following claims:

    (i)    Fourteenth Amendment claims against Gadsen regarding conditions of Plaintiff's confinement as a pretrial detainee; and

    (ii)   First and Fourteenth Amendment claims against Melino, Alves, and Ashton regarding retaliation for Plaintiff's legal filings.

### II.    Defendants to be Dismissed

Accordingly, the only federal claims that I recommend should survive the Motion to Dismiss are the claims against Gadsen (pretrial detainee conditions) and Melino, Alves, and Ashton (retaliation). I therefore recommend the Motion to Dismiss be denied as to Gadsen and Melino, but the Motion to Dismiss by the following individuals be GRANTED and they be DISMISSED as defendants in this action at this time: (1) Wall, (2) Weeden, (3) Vitale, (4) Catlow, (5) Rose, (6) Begones, (7) Cabral, (8) Forgue, and (9) Lepizzera.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within tens days of its receipt. Fed.R.Civ.P. 72(b). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete,* 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir. 1980).

_____
Jacob Hagopian
Senior United States Magistrate Judge
January 6, 2010